## O. MITCHELL LAW GROUP PLLC
184 East 161st Street Second Floor
Bronx, New York 10451

Neville O. Mitchell, Esq.
*Admitted in NY State and Federal Courts*

Tel: (718) 665-0900
Fax: (718) 665-9300

www.Attorneymitch.com
Attorneymitch@gmail.com

September 11, 2018

**BY ECF**

Honorable William H. Pauley III
United States District Judge
United States Courthouse
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: **Alexander Santana v. Capra**

**15-CV-2818(WHP)(FM)**

Dear Judge Pauley III:

  I write to request relief pursuant to Federal Rule of Civil Procedure rule 60(b)(1) based on excusable neglect or rule 60(b)(6), from the judgment herein entered by the Clerk of Court on September13, 2017, and to allow petitioner to file objections to the Report and Recommendation of Magistrate Judge Gabriel W. Gorenstein issued on August 11, 2017.

### PROCEDURAL HISTORY

  On March 30, 2015 the petitioner, Alexander Santana, filed a Pro Se petition pursuant to 28 U.S.C.A. § 2254 for a Writ of Habeas Corpus. Mr. Santana had been convicted in Bronx Supreme Court of Manslaughter in the first degree in violation of New York Penal law § 125.10(1). On June 18, 2015 the court entered orders for the case to be assigned to a Magistrate Judge and for the respondent Michael Capra, Superintendent, to file an answer within sixty (60) days.

  On July 6, 2015 the Bronx District Attorney by Assistant District Attorney Justin Braun filed a Notice of Appearance for respondent. Respondent also filed a letter apprising the court that petitioner still had a Coram Nobis application and a Criminal Procedure Law ("CPL") § 440.10

1 | Page

motion pending in state court. This court signed an order staying the habeas petition until the state actions were final. On October 2, 2015 respondent's counsel advised the court that the Appellate Division, First Department denied petitioner's Coram Nobis application on September 29, 2015 but petitioner's time to appeal had not yet expired. Likewise, on January 4, 2016 respondent counsel informed the court that petitioner's CPL § 440 motion was denied on December 22, 2015 and if he failed to file an appeal by January 29, 2016 he would have exhausted that remedy. On February 2, 2016 respondent's attorney notified the court that petitioner had failed to apply for leave to appeal marking the exhaustion of claims before this court for federal habeas purposes. On February 8, 2016 the court endorsed the letter and ordered the petitioner to file an amended petition. The respondent was ordered to submit opposition papers by May 20, 2016. Reply papers were to be filed by June 24, 2016. On February 10, 2016 this court rescinded the February 8th order and stayed this proceeding. The court directed the petitioner to file an update regarding certain appellate issues he still had pending in the New York court system.

On April 28, 2016 the respondent's attorney advised the court that petitioner had exhausted all his appeals after Justice Karla Moskowitz of the Appellate Division, First Department denied his application for leave to appeal. On May 2, 2016 the court directed the petitioner to file his amended petition by June 10, 2016. The court directed the respondent to file opposition papers by August 11, 2016. On June 10, 2016 I filed my notice of appearance and filed a letter seeking an extension to file the amended complaint. The court granted my request on June 13, 2016. The court set August 12, 2016 for the filing of petitioner's amended complaint. Respondents were directed to file opposition papers by October 12, 2016. On August 12, 2016 I requested an extension to file the amended complaint. On August 15, 2016 the court granted the application and set August 26, 2016 for filing of the amended petition and memorandum of law. Opposition papers were due on October 26, 2016 with my reply due on November 9, 2016.

On August 26, 2016 I filed petitioner's amended complaint and memorandum of law. On September 16, 2016 the respondent requested an extension of ninety days to file their answer. The court granted an extension to January 10, 2017 with petitioner to file reply papers, if any, by February 10, 2017. On December 21, 2016 respondent filed opposition papers and a memorandum of law. On February 10, 2017 I requested, and the court granted an extension to March 27, 2017 for petitioner to file reply papers. I did not file any reply papers.

On May 3, 2017 the respondent filed the pretrial and trial transcripts with the court. On August 11, 2017 United States Magistrate Judge Gabriel W. Gorenstein in his Report and Recommendation denied the petition for a writ of habeas corpus. Attached to the report was the court's procedure for filing objections pursuant to 28 U.S.C. § 636(b)(1) and rule 72(b) of the Federal Rules of Civil Procedure. It provided that the parties had fourteen (14) days (including weekends and holidays) from service to file any objections. I did not file any objections. On September 12, 2017 United States District Court Judge William H. Pauley 111 adopted the magistrate judge report and directed the Clerk of Court to terminate all pending motions and mark the case closed. On September 13, 2017 the clerk closed the case.

## RELEVANT FACTS

Petitioner's failure to file objections in this matter is wholly attributable to counsel. At all times petitioner and his mother tried to maintain contact with me. However, during the pendency of this case an illness affected my representation of Mr. Santana. I am diagnosed with bipolar manic depression.[i] I have lived with this illness for approximately twenty- two years.[ii] On occasion I am beset with either a manic episode or a major depression. From August of 2016 through the beginning of June 2017 I experienced an extended manic episode. It was followed by depression from approximately August 2017 through the early fall and mid-winter of 2017.

During the manic phase I was fully engaged in my practice. Indeed, as is the case during these times, my energy was practically boundless. I was accessible to my clients and fulfilled my obligations as an attorney. Nevertheless, there were times when my exuberance impacted my ability to practice as my brain was not always able to keep pace with my mind. Though I am prescribed medicine-and have been for years- I was not compliant at this time.

When the mania subsided, like clockwork, I was in the throes of a debilitating depressive episode. It lasted about four months. It was during this time that Judge Gorenstein rendered his report and recommendations. I was not fully engaged in my practice, or much of life. Physically drained and unable to concentrate even the most rudimentary mental tasks were troublesome and a burden. I mostly remained at home. Sometimes I restricted myself to one room. Unfortunately, I was not present in my office a lot during this time. My staff kept the office functioning at a minimal level. Not being attorneys they simply adjourned cases and told my clients I was out sick.[iii] Soon there was no staff. I eventually resumed my regimen of medicine. Eventually the cloud lifted.

While I was out of the office Millie Fernandez, Mr. Santana's mother, made many attempts to meet with me. Mr. Santana himself left messages at my office, on my phone. I finally met with Ms. Fernandez on September 11, 2017. I believe it was shortly thereafter that she informed me the case was closed. I told her I would make a motion to reopen it. I visited Mr. Santana on February 12, 2018.

My client did not know about my illness. Therefore, none of my malfeasance is attributable to them him. In fact, my client and his mother were aware of several deaths in my family between November 2016 and August 2017. They believed that was the reason for my extended absence from my office. When I eventually saw Mr. Santana and his mother I did not disabuse either of that notion.

I have wrestled with having to reveal these circumstances to the court. Pride, trepidation, and knowing that I might stand naked before my colleagues with all my imagined fears was a powerful incentive to remain mute. Indeed, this motion is being filed on the last day to file it under rule 60(b)(1). But it's the necessity of correcting the wrong my client suffered because of my illness which brings me to this application.

## REQUESTED RELIEF

Federal Rule of Civil procedure rule 60(b)(1) provides for relief from a final judgment, or order or proceeding for a mistake, inadvertence, surprise or neglect. A motion under this section must be made within in no more than one year from the entry of the judgment. Federal Rule of Civil Procedure rule 60(b)(6) provides for relief from a final judgment, order or proceeding for any other reason that justifies relief. A motion under this section must be made within a reasonable time.

Courts have given relief from a default order or judgment where an attorney completely disappeared. <u>Vindigni v. Meyer</u>, 441 F.2d 376 (2d Circ. 1971). Here it could be argued that I disappeared constructively, if not literally. I was not in my office. Both Mr. Santana and his mother were not able to reach me. In my absence Ms. Fernandez visited my office several times. Unable to give her information about the case, my staff essentially managed matters and kept the ship afloat.

In <u>United States v. Salvatore Cirami, et ano</u>, 563 F. 2d 26 (2d Circ. 1977) the court found that where an attorney suffered from a mental disorder leading him to neglect his clients' affairs they would grant relief under Rule 60(b)(6). There is no doubt that my illness led me to neglect Mr. Santana's Habeas Corpus petition. I failed to file objections. I compounded that by procrastinating and vacillating between prosecuting my client's rights and protecting my pride.

I request that the court grant the relief pursuant to rule 60(b)(1) or 60(b)(6) or hold a hearing. Without this relief Mr. Santana, through no fault of his own, will not be able to file objections and consequently has no right to appeal.

Respectfully submitted,

Neville O. Mitchell, Esq.

cc: Justin Braun

NOM/

---

[i] I am presently under the care of Dr. Cynthia Barnes. She has been my treating psychiatrist for about eighteen years. She is willing to provide an affidavit to the court.

[ii] It is with great trepidation that I reveal this matter to the court. I have invested a lot of time – probably misguidedly- keeping my illness as close to the vest as possible. Bipolar manic depression is now more commonly understood and accepted. Still it carries a stigma, if only in the mind of the patient. This is particularly true of professionals even after years of treatment.

[iii] I did not initially share the specific nature of my illness with my staff. Ultimately, I shared my "secret" with them.